**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INES ALEGRE, Individually and as Legal Guardian of DAVID ALEGRE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 06 C 5744 |
| JORGE N. AGUAYO, M.D., NORWEGIAN AMERICAN HOSPITAL, INC., MERCK & CO. INC., and MEDCO HEALTH SOLUTIONS, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Merck & Co.'s Motion to Stay and Plaintiff Ines Alegre's Motion for Remand. For the following reasons, Defendant's Motion to Stay is denied, and Plaintiff's Motion for Remand is granted.

**BACKGROUND**

On September 29, 2004, Plaintiff Ines Alegre filed her Complaint in this matter in the Circuit Court of Cook County, Illinois, naming Merck & Co. ("Merck"), Dr. Jorge N. Aguayo, Norwegian American Hospital, Inc. ("Norwegian") and Medco Health Solutions as defendants. Ms. Alegre filed the Complaint both on her own behalf (specifically, through a loss of consortium claim (R. 1-1, Compl. at ¶¶ 167-170)) and as legal guardian of her husband, Mr. Alegre. (*Id.* at ¶ 1.) Plaintiff alleges that Mr. Alegre was harmed by taking Merck's prescription pain medication – Vioxx. Specifically, Plaintiff alleges that Merck failed to fully disclose health risks, and particularly the risk of "thromboembolic adverse events, such as heart attacks and strokes" associated with use of Vioxx. (*Id.* at ¶ 21.)

Plaintiff alleges that Dr. Aguayo (and through *respondeat superior,* his employer, Norwegian) are liable not only because Dr. Aguayo prescribed Vioxx, but because he prescribed Vioxx "for chronic pain at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the medical community." (*Id.* at ¶ 61.) Plaintiff also claims, on information and belief, that "Dr. Aguayo actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre at high doses for long durations, at the expense of the health and safety of Mr. Alegre, and in conscious disregard of the foreseeable harm caused by Vioxx." (*Id.* at ¶ 66.)

Plaintiff and Dr. Aguayo are citizens of Illinois (*id.* at ¶¶ 1-2), Norwegian is incorporated and located in Illinois (*id.* at ¶ 3), and Merck is a citizen of New Jersey. (R. 14-1, Am. Notice of Removal at ¶ 12.) On October 23, 2006, Merck filed a Notice of Removal removing Plaintiff's action to this Court pursuant to this Court's diversity jurisdiction and 28 U.S.C. § 1332 (R. 1-1), which they amended one week later, on October 30, 2006. (R. 14-1.) The citizenship of the parties would normally render Merck's removal improper. *See* 28 U.S.C. § 1441(b) (a defendant may remove an action not founded on a claim or right arising under the Constitution, treaties or laws of the United States "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"); 28 U.S.C. § 1332(a) (district courts do not have diversity jurisdiction over suits between citizens of the same state). Merck's notice argued that even though Dr. Aguayo and Norwegian are Illinois citizens, removal is proper in this case because Plaintiffs, in an effort to defeat diversity jurisdiction, improperly named Dr. Aguayo and Norwegian as defendants under both the doctrine of fraudulent joinder (R. 14-1, Am. Notice of Removal at ¶¶

2

16 - 20) and the similarly named but distinct doctrine of fraudulent misjoinder. (*Id.* at ¶¶ 21 - 24.)

Merck has moved the Court to stay all proceedings in this action pending its anticipated transfer pursuant to 28 U.S.C. § 1407 to the multidistrict litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana (*In re Vioxx Products Liability Litigation,* MDL No. 1657) to coordinate federal product liability actions related to Vioxx. (R. 12-1.) Plaintiff has both opposed Merck's motion and has filed a motion to remand this action to the Cook County Circuit Court. (R. 19-1.)

## LEGAL STANDARD

Defendants may remove civil suits filed in state court to federal court pursuant to 28 U.S.C. § 1441 and related statutes. "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993). The burden of establishing federal jurisdiction falls on the party seeking removal. *Boyd v. Phoenix Funding Corp.,* 366 F.3d 524, 529 (7th Cir. 2004).

## ANALYSIS

**I.      Timing of Consideration of Motion to Remand**

The first question confronting the Court is whether to address Plaintiff's remand motion now or to stay all proceedings, which could result in the MDL judge ruling on the remand motion if the case is transferred to the Eastern District of Louisiana. The Court will consider Plaintiff's remand motion now.

Merck's stay motion argues that because resolution of all similar remand motions serves the interests of judicial economy and uniformity of decision, and because a stay will not unduly prejudice Plaintiff, this Court should order a stay of all proceedings. (R. 12-1, Merck's Mot. to Stay

at 4-7.) In response, Plaintiff argues that because federal jurisdiction is in doubt, this Court has both the ability and the duty to consider its jurisdiction over this matter prior to ruling on Merck's motion to stay. (R. 19-1, Opp. to Merck's Mot. to Stay and Mot. for Remand at 6-8.)

This Court "retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district." *Rutherford v. Merck & Co.,* 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006) (citing *Illinois Mun. Retirement Fund v. Citigroup, Inc.,* 391 F.3d 844, 850 (7th Cir. 2004)). "A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions." *Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1046 (E.D. Wis. 2001) (citing Rules of Procedure of the J.P.M.L. R. 1.5; *General Elec. Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir. 1979)). Given that to this point Merck has merely identified this action on a "tag-along letter," meaning that a Conditional Transfer Order has not yet issued (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 1), the Court clearly has the discretion to first rule on either the remand motion or the motion to stay. Courts have reached both conclusions on this question, often without providing a great deal of guidance on how they reached their decision. *See Meyers,* 143 F. Supp. 2d at 1047-48 (citing cases). The *Meyers* court, recognizing this deficit, formulated a compelling and logical framework for deciding whether to first address a remand motion or a motion to stay. *See id.* at 1048-49. The Court adopts the *Meyers* framework set forth below. *See, e.g., Rutherford,* 428 F. Supp. 2d at 845-46; *Riddle v. Merck & Co.,* Civil No. 06-172-GPM, 2006 WL 1064070 at *2 (S.D. Ill. Apr. 21, 2006); *Martin v. Merck & Co.,* No. S-05-750 LKK/PAN, 2005 WL 1984483 at *1-2 (E.D. Cal. Aug. 15, 2005); *Chinn v. Belfer,* No. Civ. 02-00131-ST, 2002 WL 31474189 at * 3 (D. Or. June 19, 2002).

In support of its view that the Court should stay proceedings prior to considering Plaintiff's remand motion, Merck correctly stresses that "[t]he pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in [MDL] proceedings," and that remand motions in this matter "can be presented to and decided by the transferee judge." *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Nothing in this language, however, *requires* this Court to stay proceedings prior to consideration of Plaintiff's remand motion. Furthermore, the primary policy justification for Merck's view – specifically, that an MDL judge can consider similar remand motions together more efficiently than other district judges can by considering such motions on an individual basis, while also producing more uniform results – does not apply in this case.

Plaintiff's allegations that Dr. Aguayo prescribed an excessive amount of Vioxx to Mr. Alegre distinguish this case from the more common scenario in which a plaintiff names a physician as a defendant for merely prescribing a drug and failing to warn of its risks. As explained further below, this factual difference significantly impacts the analysis of Merck's fraudulent joinder argument. Despite its extensive reference to the number and type of cases previously transferred to the MDL judge in Louisiana as well as to the characteristics of individual cases, Merck fails to point to any remand motion pending in the MDL requiring analysis of this issue. As a result, there is no indication that any efficiency or uniformity gain will result from transfer of this case to the MDL judge.

The benefits of consideration of the remand motion at this stage, on the other hand, are clear. The *Meyers* court explained that the constitutional significance of jurisdiction, concerns of judicial efficiency, and the importance of allowing plaintiffs to choose their forum, together with the language of 28 U.S.C. § 1447(c), which directs that "[i]f at any time before judgment it appears that

the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added), dictate that "a court's first step should be to make a preliminary assessment of the jurisdictional issue." *Meyers,* 143 F. Supp. 2d at 1048. Then, "[i]f this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Id.* at 1049. The *Meyers* court went on to explain the course of action that should follow if the preliminary assessment indicates that the jurisdictional issue at hand is "factually or legally difficult," including the circumstances in which the Court should consider addressing a motion to stay. *Id.* The Court, however, need not discuss later steps in the process. The Court finds, as explained further below, that a preliminary review of Plaintiff's remand motion establishes – without any need to resort to difficult factual or legal issues – that removal was improper in this case. This approach is consistent with the Seventh Circuit's clear directive that "a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998). "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"*Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

**II.     Fraudulent Joinder of Dr. Aguayo and Norwegian**

Merck argues that Plaintiffs do not have a legitimate claim against Dr. Aguayo and Norwegian, and that Plaintiffs joined them in their complaint in a fraudulent attempt to destroy the Court's diversity jurisdiction. If this is correct, Merck's removal of this case is proper, because fraudulent joinder of parties does not destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir. 1999). A party arguing fraudulent joinder must

6

demonstrate that there is "no reasonable possibility that a state court would rule against the in-state defendant." *Id.* (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)). Merck contends that there is no possibility that an Illinois court would rule against Dr. Aguayo (and, as a result of *respondeat superior,* against Norwegian) because Plaintiff's allegations against Dr. Aguayo are internally inconsistent with those against Merck. Specifically, Merck claims that Plaintiff's allegation that Dr. Aguayo decided to prescribe Vioxx despite his awareness of the increased risks for cardiovascular events associated with the drug is inconsistent with Plaintiff's claim that Merck concealed the alleged risks of Vioxx from everyone, including the medical community and Dr. Alegre. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10.)

Merck's fraudulent joinder argument fails for two reasons. First, allegations that Merck concealed the risks of Vioxx and allegations that doctors were aware of the risks of Vioxx are not necessarily inconsistent. Merck is not the only source of information on its drug, and indeed, Plaintiff's Complaint specifically discusses independent sources of information on Vioxx, such as studies and journal articles, that could have educated physicians about the drug. *See, e.g.,* R. 1-1, Compl. at ¶ 37 (discussing an August 2001 article in the *Journal of the American Medical Association* that "highlighted the dangerous cardiovascular adverse event profile of COX-2 inhibitors, particularly VIOXX"). Merck's argument has failed in at least one other case for this reason. *See Melton v. Merck & Co.,* Civil Action No. 7:06-45-JMH, 2006 WL 1543036 at *3 (E.D. Ky. June 1, 2006) (finding that Merck's "inconsistent pleading" argument fails because "[i]t is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that reasonable Health Care Providers would still have known of the risks from the information that had come out").

7

Second, Merck simply ignores allegations regarding Dr. Aguayo's prescription of Vioxx that are critical to the fraudulent joinder analysis. Merck points to a number of cases in which a court found fraudulent joinder when a plaintiff (1) alleges that a pharmaceutical company concealed the risks associated with a drug; and (2) includes a claim against a physician based on the physician's decision to prescribe a drug despite knowledge of its risks. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10-11.) The nature of Plaintiff's allegations against Dr. Aguayo, however, differ from this more common factual scenario because Plaintiff claims that Dr. Aguayo not only prescribed Vioxx to Mr. Alegre, but that he prescribed Vioxx "at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the medical community." (R. 1-1, Compl. at ¶ 61.) This allegation, and others like it, provide the basis for an Illinois law negligence claim against Dr. Aguayo independent of his mere prescription of Vioxx to Mr. Alegre, foreclosing application of the fraudulent joinder doctrine. *See Jones v. Chicago HMO Ltd. of Ill.,* 730 N.E.2d 1119, 1130 (Ill. 2000) (in professional negligence cases, "professionals are expected to use the same degree of knowledge, skill, and ability as an ordinarily careful professional would exercise under similar circumstances").

Other courts in recent cases involving allegations against physicians as well as against drug companies for their failure to warn of side effects or dangers of drugs – including the MDL judge in another case involving allegations "different" from the standard case involving claims against doctors for mere prescription of Vioxx – have similarly refused to find fraudulent joinder. *See* Tr. of Proceedings Before Hon. Eldon E. Fallon at 3-6, *Tallas v. Merck & Co.,* MDL Docket No. 1657 (E.D. La. Aug. 30, 2006) (finding that plaintiff did not fraudulently join physician when plaintiff

8

alleged not only that physician prescribed drug, but that physician did not examine or monitor plaintiff); *K.B. v. Janssen Pharm., L.P.,* No. 4:05CV1914 HEA, 2006 WL 544015 at *3 (E.D. Mo. Mar. 3, 2006) (finding that plaintiffs did not fraudulently join physicians when plaintiffs alleged not only that physicians prescribed drug, but that they failed to monitor plaintiffs after prescribing the drug and failed to properly follow drug packaging when prescribing drug); *Storlien v. Weigand,* No. 05-1283-JTM, 2006 WL 3068878 at *3 (D. Kan. Oct. 25, 2006) (holding that while a fraudulent joinder argument "might have legs" if plaintiff's complaint was limited to allegations of prescribing medication without adequate warning, plaintiff did not fraudulently join physician when plaintiff "also advanced a general claim of medical malpractice against [the physician]). The same conclusion is warranted here.

## III. Fraudulent Misjoinder of Dr. Aguayo and Norwegian

In addition to their fraudulent joinder argument, Merck also contends that Dr. Aguayo and Norwegian were fraudulently misjoined because the claims against Dr. Aguayo and Norwegian do not arise from the same transaction or occurrence as those against Merck. The doctrine of fraudulent misjoinder arose from the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), in which the court held that while "mere misjoinder" will not destroy diversity jurisdiction, "egregious" misjoinder of claims is tantamount to fraudulent joinder and may consequently destroy diversity. Merck, stressing that this doctrine has also been adopted in the Fifth Circuit[1] and in several district courts, argues that the Court should apply the doctrine here and sever

---

[1] It is not entirely clear that the Fifth Circuit has "adopted" the *Tapscott* test. The portion of the Fifth Circuit case that Merck cites merely notes that "it *might be* concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) (emphasis added). A subsequent Fifth Circuit opinion from this same litigation declined to reach the fraudulent jurisdiction issue for reasons unrelated

9

or dismiss Plaintiff's claims against Dr. Aguayo and Norwegian without prejudice. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12-15.)

The Court declines to follow *Tapscott* or apply the doctrine of fraudulent misjoinder here. Following a thorough and persuasive analysis of fraudulent misjoinder and the case law examining the doctrine, the Southern District of Illinois recently declined to follow *Tapscott. See Rutherford,* 428 F. Supp. 2d at 850-55. The *Rutherford* court detailed the rationale for its conclusion at length, noting, *inter alia,* that (1) no Supreme Court authority suggests that joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court; (2) federal courts have traditionally held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case; and (3) the pronounced lack of clarity in fraudulent misjoinder jurisprudence renders its application a violation of the Seventh Circuit's "first virtue of any jurisdictional rule," specifically, its "clarity and ease of implementation" (citing *Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805, 806 (7th Cir. 2005)). *Id.* With particular stress on the currently muddled state of fraudulent misjoinder jurisprudence and the resulting impact on ease of application of jurisdictional rules, the Court will follow *Rutherford's* well-reasoned lead in this case.

Merck argues that the Court should apply the doctrine of fraudulent misjoinder, despite the lack of binding authority on the question, to preclude what they call Plaintiff's "blatantly improper scheme to prejudice Merck and attempt to evade federal jurisdiction." (R. 27-1, Merck's Reply in

---

to the doctrine itself, but added that it was making its decision "without detracting from the force of the *Tapscott* principle . . . ." *In re Benjamin Moore & Co.,* 318 F.3d 626, 630 (5th Cir. 2002). Neither of these statements provides a clear adoption of *Tapscott,* and the Fifth Circuit has yet to apply the *Tapscott* doctrine in any case.

Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 13.) Even if the Court were to recognize the doctrine of fraudulent misjoinder in this case, however, Plaintiff has not misjoined any defendants here. Illinois law, similar to federal law, allows plaintiffs to join defendants "against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions." 735 ILCS 5/2-405(a); *compare* Fed. R. Civ. P. 20(a) (allowing joinder of parties as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"). "The objective of joinder is the economy of actions and trial convenience." *Boyd v. Travelers Ins. Co.,* 652 N.E.2d 267, 272 (Ill. 1995). "The determining factors are that the claims arise out of closely related 'transactions' and that there is in the case a significant question of law or fact that is common to the parties." *Id.*

Merck argues that there is no connection between Plaintiff's claims against Merck, which focus on inadequate disclosure of the risks associated with use of Vioxx, and Plaintiff's claims against Dr. Aguayo, which focus in large part on his prescription of an excessive dose of Vioxx to Mr. Alegre. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12-13.) Merck, which appears to focus on the disparate nature of the relevant transactions, reads the "same transaction" requirement too strictly. The Illinois Supreme Court has clearly indicated that relevant transactions need not have much in common to allow for joinder of defendants, so long as the transactions are "closely related." *See Boyd,* 652 N.E.2d at 272-73 (finding the explosion of a water heater and the subsequent loss of the heater by an insurance company closely related, allowing for joinder of claims against water heater manufacturer and insurance company, because

11

"[the insurance company] assumed possession of the heater for the sole purpose of determining the cause of the explosion").

Here, Vioxx's alleged failure to disclose the dangers of Vioxx and Dr. Aguayo's alleged prescription of an excessive amount of the drug are closely related in that they are the two factors that led to the ingestion of Vioxx that Mr. Alegre claims caused his heart attack. The acts are further interrelated in that Plaintiff's Complaint alleges upon information and belief that "Dr. Aguayo actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre . . . in conscious disregard of the foreseeable harm caused by Vioxx." (R. 1-1, Compl. at ¶ 66.) The transmittal of information (or lack thereof) from Merck or independent sources such as journal articles to Dr. Aguayo to Mr. Alegre provides another common series of transactions and a question of fact common to the defendants. *See Copeland v. Eli Lilly & Co.,* No. 05-04318-CV-C-NKL, 2005 WL 3533394 at *5 (finding in a factually similar case that "the chain of communication – and any breaks in it – from the drug manufacturer to the patient is a common issue of fact"). These interrelations between Plaintiff's claims against Merck and those against Dr. Aguayo (and Norwegian) support that joinder here will lead to the intended benefits of joinder of defendants – economy of actions and trial convenience – outlined by the Illinois Supreme Court in *Boyd*. In sum, regardless of whether Merck's burden is to establish "egregious misjoinder" or "mere misjoinder," it cannot carry its burden here.

## IV.     Plaintiff's Request for Costs

In her reply brief, Plaintiff argues that because Merck's briefs ignored relevant case law and the allegations against Dr. Aguayo in the Complaint, the Court should award Plaintiff the costs she incurred in briefing the issues before the Court. Plaintiff points to *Kuperstein v. Hoffman-Laroche,*

*Inc.,* 457 F. Supp. 2d 467, 474 (S.D.N.Y. 2006), in which the court awarded costs based on a pharmaceutical defendant's "failure to address the governing law or accurately represent the factual allegations of the Complaint." The Court does not find that Merck ignored relevant law or misrepresented any allegations in the Complaint, and as the *Kuperstein* court itself noted, "the mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff." *Id.* at 472. As a result, Plaintiff's request for costs is denied.

## **CONCLUSION**

Plaintiff did not fraudulently join or fraudulently misjoin Defendants Dr. Jorge N. Aguayo and Norwegian American Hospital, Inc. in this matter, and they are proper defendants in this case. Their presence both destroys the complete diversity necessary for the Court's jurisdiction over this matter and renders removal improper under 28 U.S.C. § 1441(b). Accordingly, the Court remands the case to the Circuit Court of Cook County, Illinois. All remaining pending motions are transferred to the Circuit Court of Cook County with this case. Plaintiff's request for costs is denied.


Dated: January 17, 2007                    ENTERED

                                           _____
                                           AMY J. ST. EVE
                                           United States District Judge